UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KENNETH PARIS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 11-3402 |
| v. | : | MEMORANDUM OPINION & ORDER |
| LOCKHEED MARTIN CORPORATION, | : | |
| Defendant. | : | |

This matter is before the Court on a motion for summary judgment filed by Defendant. Oral argument on the motion was heard on May 15, 2013, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, and those articulated below, the motion will be granted.

Background

Plaintiff Kenneth Paris filed the Complaint in this matter on June 13, 2011 alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act and the New Jersey Law Against Discrimination by Plaintiff's employer, Defendant Lockheed Martin Corporation. In Plaintiff's brief in opposition to summary judgment, Plaintiff's attorney withdrew previously pled claims of negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Plaintiff began working for Defendant in 1980. He has held various positions, most recently employed as a Project Specialist Senior Staff member in Defendant's MS2 line of business. (Compl., ¶ 13; Pl. Tr. 48:9-51:7.) At the time the Complaint was filed, Plaintiff's supervisor was Michael J. McCandless, and his supervisor was Larry Finnegan. (Compl., ¶ 15, 16.)

Plaintiff has alleged that, although he was "a well-regarded employee," (Compl., ¶ 19), in July of 2010, when he was 52 years old, he received a poor performance review rating of "4" or "Basic Contributor" on an interim performance review conducted by McCandless. (Compl., ¶ 19.) Plaintiff also asserts that the concept of going "younger" was frequently discussed throughout the corporation. (Compl., ¶ 23.) Finally, a co-worker named Zak Atiram, believed to be in his 20s, was being trained for Plaintiff's position. (Compl., ¶ 24.) Through Defendant's internal grievance procedure, Plaintiff explained these circumstances, which he perceived to constitute age discrimination, to Kimberly A. Shell of Defendant's Human Resources Department on August 12 and August 17, 2010. (Compl., ¶ 25-26.) Shell allegedly requested that Plaintiff discuss his complaints directly with McCandless. (Compl., ¶ 27.) Thereafter, Plaintiff filed a Charge of Discrimination with the EEOC, and was subsequently issued a Notice of Right to Sue. (Compl., ¶ 32-33.) Importantly, Plaintiff associates chest pains and a November 2010 surgery with the alleged age discrimination. (Compl., ¶ 30-31.)

Plaintiff has asserted claims for: (1) disparate treatment in violation of the ADEA in that the performance management system, for example, treated similarly situated employees under age 40 more favorably than older employees; (2) hostile wok environment in violation of the ADEA; (3) disparate treatment in violation of the NJ LAD; (4) hostile work environment in violation of the NJ LAD; (5) retaliation in violation of the ADEA[1]; and (6) retaliation in violation of the NJ LAD.

---

[1] "(1) After proffering an official complaint of discrimination to Shell of Defendant's Human Resources Department, Plaintiff was required by Shell to discuss his concerns with McCandless, the object of many of those complaints, (2) Plaintiff was denied training opportunities, (3) Plaintiff was denied promotional and/or lateral employment opportunities, (4) Plaintiff was required by McCandless to perform redundant and/or duplicative job tasks and assignments." (Compl., ¶ 74.)

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c) (1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256–57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Analysis

The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992).  Analysis of Plaintiff's claims is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, an employee must first

4

establish by a preponderance of the evidence a prima facie claim of discrimination by showing  (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought; (3) he or she was subject to an adverse employment action despite being qualified; and (4) the employer treated more favorably those not in the protected class or, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position.  Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted).  The prima facie test is a flexible one which must be tailored to fit the specific context in which it is applied.  Id. at 797-98.

> Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision.  McDonnell Douglas, 411 U.S. at 802.  The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  However, "[a]n employer cannot successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'"  Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

> Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual."  Fuentes, 32 F.3d at 763.  A plaintiff may establish pretext directly, by persuading the court that a discriminatory reason more

5

likely motivated the employer, or indirectly, by showing that the employer's proffered reason is unworthy of credence.  Ezold, 983 F.2d at 523.  One of these is sufficient; the employee does not have to prove both that the explanation is implausible and that discrimination was a motivating factor.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995).  On the other hand, the employee cannot carry his burden by showing that the employer's decision was "wrong or mistaken."  Fuentes, 32 F.3d at 765.  Rather, he must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

     A plaintiff's subjective belief that his qualifications should have been accorded more weight is not probative of pretext.  See, e.g., Valdes v. Union City Bd. Of Ed., 186 Fed. Appx. 319, 323 (3d Cir. 2006).  An employer is entitled to evaluate which qualifications best fit its needs in selecting a candidate.  See Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding legitimate reasons for not selecting the more experienced candidate because it was up to the university to evaluate which qualifications best fit departmental needs).  That is, a plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment.  Langley v. Merck & Co., 186 Fed. Appx. 258, 261 (3d Cir. 2006).

Age Discrimination Claims under the ADEA and NJLAD

In order to establish a prima facie case under the ADEA, a plaintiff must prove that: (1) the plaintiff belongs to a protected class--over age 40; (2) the plaintiff was qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) the adverse action occurred under circumstances giving rise to an inference of age discrimination.  See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 331 (3d Cir. 2000); Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because the employment actions complained of do not constitute adverse employment actions under the ADEA or NJLAD, nor did any action occur under circumstances giving rise to an inference of age discrimination.  Further, even if the Court finds that a prima facie case of discrimination exists, Defendant argues that Plaintiff cannot show that its legitimate, nondiscriminatory reasons for its employment actions were pretextual, and that age was the determining factor for the actions.

Plaintiff argues that genuine issues of material fact preclude the entry of summary judgment.  He contends that the adverse employment action taken was a failure to promote when Plaintiff expressed interest in early 2010 in pursuing a "baseline lead" position with Defendant.  Plaintiff further alleges that he was subjected to disparate treatment[2] in that he "was not fast-tracked to a future leadership position . . .

---

[2]As to the claims that Defendant created a hostile work environment, Plaintiff contends  that Defendant (1) failed to address comments made to him by co-worker Zach Atiram stating, "I'm going to take your job," and (2) through its Human Resources representative, advised Plaintiff to address his complaints to McCandless, when McCandless was the one who subjected him to disparate treatment because of his age. (Pl. Br., p. 45.)  Neither of these circumstances is sufficient to survive summary

as were many young, recent college graduates," (Pl. Br., p. 30), such as those enrolled in certain training programs. In addition, Plaintiff argues that the negative interim performance review was also an adverse employment action, as "[r]ankings are related to salary increases, opportunities, and even terminations or layoffs." (Pl. Br., p. 32 citing McCandless Tr. 48:7-25.) Next, Plaintiff contends that being assigned the "inactive" BMD 361 baseline was an adverse employment action, as it offered no new responsibilities but served as an excuse to deny Plaintiff further advancement. Finally, Plaintiff asserts that disallowing him to attend training in October 2010 was an adverse employment action, as the CAM and EVM training offered was a prerequisite for Plaintiff to qualify as a baseline lead.

Regarding an inference of age discrimination, Plaintiff argues that substantially younger individuals, David Branch, Jeff Hager, Sarah Croce, Chuck Augustine, and Frank Morrow, were assigned lead positions.[3] Even if the Court assumes that Plaintiff can show the other elements of a prima facie case, the record is devoid of circumstances

---

judgment on a claim of hostile work environment in violation of the ADEA and/or NJLAD in that there is no indication that the statements were motivated by Plaintiff's age, and neither is sufficiently severe or pervasive that a reasonable person would find the workplace hostile or abusive. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2008).

[3] As to the pretext argument, Plaintiff contends that Defendant's explanations are unworthy of credence because (1) he was a highly skilled employee who never received a negative performance review in his three decades with Defendant; (2) there were programs designed to fast-track young college graduates into leadership positions, but nothing comparable for older employees; (3) Plaintiff was informed that his department was moving toward baseline leads and away from technical staff people, so Plaintiff would fare best if he moved to another department because layoffs were in the horizon. Because Plaintiff has failed to establish a prima facie case of age discrimination, the Court need not discuss pretext.

giving rise to an inference of age discrimination. Indeed, when counsel was questioned at oral argument on whether there was *anything* that would tend to indicate that actions taken regarding Plaintiff were due to his age, the response was, "There is nothing else."

The record evidence, in fact, indicates the absence of age as a factor in employment decisions. Plaintiff began reporting to McCandless on or about May 24, 2010. (Pl. Tr. 12:10-13:6.) At the time Plaintiff began reporting to him in 2010, McCandless was 54 years old. (McCandless Cert. at ¶4.)

Regarding the July 2010 interim performance review for which Plaintiff was rated "4" - "Basic Contributor," Plaintiff contends he initially received a "3" – "Successful Contributor" rating and other employees - William Harris and the employees reporting to Marianne Edwards - initially received a lower rating of "4" – "Basic Contributor." (Pl. Tr. 90:23-91:22; 95:12-96:14.) Because the managers of these employees allegedly "fought [harder] for them" during the interim review process and "ha[d] influence with higher-up Lockheed management," these employees ultimately were ranked higher than Plaintiff. (Pl. Tr. 92:14-17; 95:23-25.) Even if these circumstances are true, they do not give rise to an inference of age discrimination. William Harris is older than Plaintiff; he was 62 at the time. (Pl. Tr. 91:25-92:13; Shell Cert. at ¶11.) Marianne Edwards had five employees ranked and rated against Plaintiff during the 2010 interim review process, all of whom were either older than or a comparable age to Plaintiff – Gregory Bartz (54), Mark Bastian (51), Terry Frederick (52), John Griscom (51), and Robert Hayes (50). (Shell Cert. at ¶10.)

McCandless had assigned Jeff Hager, age 43 in the summer of 2010, a lead position in August 2007. (McCandless 10/29/12 Cert. at ¶6; Shell 10/29/12 Cert. at ¶4.)

9

In late 2009, when McCandless began to supervise David Branch, age 40 in the summer of 2010, he was already in a lead position. (McCandless 10/29/12 Cert. at ¶7; Shell 10/29/12 Cert. at ¶4.) In or about March 2010, McCandless assigned Jeff Shanker, age 52 in the summer of 2010, a baseline lead position. (McCandless 10/29/12 Cert. at ¶8; Shell 10/29/12 Cert. at ¶4.) Again, Plaintiff began reporting to McCandless on or about May 24, 2010. (Pl. Tr. 12:10-13:6.) In June and July 2010, McCandless assigned three employees to baseline lead positions - Gerry Mahon, age 57, Tom Rossiter, age 56, and Toni Anthony, age 55. (McCandless 10/29/12 Cert. at ¶8; Shell Cert. at ¶17.) In August 2010, McCandless assigned Plaintiff to a baseline lead position. (McCandless 10/29/12 Cert. at ¶8.) Plaintiff has speculated that Sarah Croce, Chuck Augustine, and Frank Morrow were younger employees assigned lead positions, although he admitted he did not have any knowledge of their qualifications. (Pl. Tr. 70:17-73:7.; 74:2-12.)

Regarding the allegation that a younger employee was being trained as Plaintiff's "back-up," the record shows that McCandless had (and has) a philosophy of assigning back-ups. (Pl. Tr. 58:6-9; 59:6-8.) The purpose of the back-up was to have another employee trained in those job duties in the event the employee is out of the office, such as on vacation or sick leave. (McCandless Tr. 87:12-88:11.) Because Plaintiff trained Atiram as his back-up, Atriam was able to perform Plaintiff's job duties when Plaintiff was on medical leave in November 2010 and December 2010. (Pl. Tr. 61:20-62:9; 63:4-18.) When Plaintiff returned to work, he resumed his job duties. (Pl. Tr. 63:7-24.)

Because Plaintiff has failed to establish an essential element of his prima facie case, summary judgment will be granted on the claims of age discrimination.

Retaliation

      To establish a prima facie case of retaliation, an ADEA plaintiff "must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the adverse action." Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995). Filing a complaint with the EEOC is protected conduct under 29 U.S.C. § 623. In order to make out the second element of a prima facie case, a plaintiff claiming retaliation must "show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006)). The retaliation provision is not limited to employer's actions that affect terms, conditions or status of employment. Burlington Northern, 548 U.S. at 61-68.

      Beside the arguments made above as to actions taken that were adverse to him, Plaintiff cites to the temporal proximity of the adverse employment actions previously discussed to Plaintiff's complaints to Human Resources. Plaintiff met with Kimberly Shell, his HR Business Partner, on August 12, 2010 and again on August 13, 2010 to discuss his concerns relating to his 2010 interim review and rating. (Pl. Tr. 140:15-22; Shell Tr. 77:21-78:14.) Plaintiff complained that he was being forced out because of his age as evidenced by his interim rating and allegedly younger employees being assigned

11

lead positions. (Pl. Tr. 141:6-22; 142:2-25; 143:11-17; Shell Cert. at ¶13.)[4] On or about October 15, 2010, Plaintiff filed a Charge of Discrimination with the EEOC.

The negative interim performance evaluation and failure to promote when Plaintiff expressed interest in early 2010 in pursuing a "baseline lead" position preceded Plaintiff's protected activity. The actions that did occur subsequent to or contemporaneously with Plaintiff's protected activity were favorable toward him. On or about August 27, 2010, McCandless assigned Plaintiff to the baseline lead position for the BMD3.6.1 baseline. (Pl. Tr. 14:21-15:20; 158:13-15; McCandless Tr. 68:10-69:14.) On or about October 27, 2010, Plaintiff was assigned to the lead position for the J-35 baseline. (Pl. Tr. 16:3-15; McCandless Tr. 70:4-15.) In early 2012, Plaintiff was assigned two more lead positions. (Pl. Tr. 26:19-27:4.)

As to the training, the record shows that in August 2010, Plaintiff's training class was cancelled for all employees except those falling within a certain job category, due to budgetary constraints. (Pl. Tr. 28:13-15; 181:7-184:11.) Plaintiff was rescheduled to take the training class in September 2010, but he cancelled it for personal reasons. (Pl. Tr. 130:15-131:1; 181:18-21.) Plaintiff completed the training class when he returned to work after his medical leave in early 2011. (Pl. Tr. 27:5-8.) Because Plaintiff has failed to establish a prima facie case of retaliation, summary judgment will be granted as to those claims.

---

[4] Shell investigated whether the 2010 interim review was the result of age discrimination and determined no discrimination occurred. (Pl. Tr. 157:24- 158:3, 159:7-12, 166:2-12; Shell Tr. 29:8-30:3; Shell Cert. at ¶16.)

<u>Conclusion</u>

For these reasons, as well as those placed on the record during oral argument,

IT IS ORDERED on this 3rd day of June, 2013 that Defendant's motion for summary judgment [21] is hereby <u>GRANTED</u>.

      <u>/s/ Joseph H. Rodriguez</u>
      JOSEPH H. RODRIGUEZ
      U.S.D.J.